IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST ADKINS, <br><br>                Petitioner, <br><br> v. <br><br> SECRETARY JOHN E. WETZEL and SUPERINTENDENT LOUIS FOLINO, <br><br>                Respondents. | CIVIL ACTION <br> NO. 13-3652 |

## OPINION

**Slomsky, J.**                                                                                            August 18, 2014

### I.      INTRODUCTION AND BACKGROUND

On April 13, 1982, a jury found Ernest Adkins ("Petitioner") guilty of second-degree murder, robbery, criminal conspiracy, and possession of an instrument of crime. (Doc. No. 20 at 2.) At trial, he was represented by Vincent Ziccardi, Esquire ("Trial Counsel"). (Doc. No. 1 at 3.) The Superior Court of Pennsylvania summarized the facts of the case as follows:

> The Commonwealth presented evidence that on September 24, 1981, co-defendant Paul Boatwright entered the home of the [Petitioner's] next-door neighbor, Edward Rambert, through a window and then open[ed] the door, admitting [Petitioner]. The two men ransacked the house, looking for money. A boarder, Maurice Ingraham[,] was threatened. Rambert was knifed to death, suffering two stab wounds to the chest. A color television and silverware were taken from the house. It was the Commonwealth's theory that Boatwright committed the murder and that [Petitioner] was liable as his accomplice. [Petitioner's] defense was that Boatwright committed the killing after [Petitioner] had left the premises.

Commonwealth v. Adkins, No. 3568 Phila. 1993, slip op. at 1 (Pa. Super. Ct. Nov. 1, 1994). Petitioner received a mandatory life sentence for his crimes. (Doc. No. 20 at 2.) He appealed his conviction and sentence and was represented by Francis E. Gleeson, Esquire, ("Appellate

Counsel") on appeal.[1]  (Doc. No. 1 at 3.)  On March 1, 1985, the Superior Court affirmed the judgment of sentence.  (Doc. No. 20 at 2.)  Petitioner did not seek allocatur from the Supreme Court of Pennsylvania.  (Id.)

On January 6, 1988, Petitioner attempted to collaterally attack his sentence pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. Ann. §§ 9541-46, by filing a pro se petition for relief.  (Id.)  Then, on February 4, 1998, the PCRA Court appointed Patricia M. Dugan, Esquire ("PCRA counsel") to represent Petitioner.  (Doc. No. 1 at 3.)  She later filed an Amended PCRA Petition on Petitioner's behalf.  (Id.)  On October 26, 1993, after holding an evidentiary hearing, the PCRA court dismissed the Amended Petition.  (Doc. No. 20 at 2.)  Following the denial of his PCRA petition, Petitioner retained Paul J. Hetznecker, Esquire, to represent him on PCRA appeal.  (Doc. No. 1 at 3.)  On November 1, 1994, the Superior Court of Pennsylvania affirmed the dismissal of the PCRA petition.  (Doc. No. 20 at 2.)  Then, on April 7, 1995, the Pennsylvania Supreme Court denied Petitioner's request for allocatur.  (Id.)

More than eighteen years later, on June 19, 2013, Petitioner initiated the present action by filing a pro se Petition for a Writ of Habeas Corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.  (Doc. No. 1.)  The following day, he filed a second pro se PCRA petition in state court.  (Id. at 2.)  He later filed an amended PCRA petition on August 23, 2013.  (Id.)  Petitioner also filed an amended § 2254 petition on September 3, 2013, pursuant to the Court's order directing him to use the proper form.  (Doc. No. 3.)  Then, on January 6, 2014, the Court referred the case to the Honorable Chief U.S. Magistrate Judge Carol Wells for a Report and Recommendation.  (Doc. No. 6.)  Respondents subsequently filed a Response in Opposition.  (Doc. No. 18.)

---

[1] Petitioner stated that Mr. Gleeson never contacted him, and consequently, Petitioner did not know that Mr. Gleeson filed an appeal on his behalf.  (Doc. No. 1 at 3.)

2

On May 14, 2014, Judge Wells issued her Report, recommending that Petitioner's claims for relief be denied and that a certificate of appealability should not be issued.  (Doc. No. 20.) On June 26, 2014, Petitioner filed timely objections to the Report and Recommendation.  (Doc. No. 26.)  He simultaneously filed an Application for a Certificate of Appealability.  (Doc. No. 27.)  In the weeks to follow, Petitioner submitted various documents to either supplement or amend these filings.  (Doc. Nos. 30, 31, 33.)  Petitioner's objections to the Report and Recommendation are now before the Court for review.  For reasons that follow, the Court will deny Petitioner's objections and will adopt and approve the Magistrate Judge's Report and Recommendation.[2]

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and local rules of court, a district judge may designate a magistrate judge to file proposed findings and recommendations in regard to a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  "Within fourteen days after being served with a copy [of the magistrate's report], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."  28 U.S.C. § 636(b)(1).  E.D. Pa. Local Civil Rule 72.1.IV(b) requires an objecting party to "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  With respect to pro se litigants, however, this rule may be relaxed.  See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as an objection).

---

[2] In reaching this decision, the Court has considered the following: the Petition for a Writ of Habeas Corpus (Doc. Nos. 1, 3), the Response in Opposition with accompanying exhibits (Doc. No. 18), the Report and Recommendation of Chief United States Magistrate Judge Carol Wells (Doc. No. 20), Petitioner's Objections to the Report and Recommendation (Doc. No. 26), an Application for a Certificate of Appealability (Doc. No. 27), and all other related filings and exhibits submitted in support thereof (Doc. Nos. 30, 31, 33).

The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)). The Third Circuit has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

**III.   ANALYSIS**

In his habeas petition, Petitioner raised the following claims for relief: 1) Under Miller v. Alabama, 132 S. Ct. 2455 (2012), Petitioner's sentence of life imprisonment without the possibility of parole violates the Eighth Amendment; and 2) Petitioner was denied effective assistance of counsel at trial and on direct appeal, and PCRA counsel was ineffective for failing to raise the issue of their ineffectiveness on collateral appeal. (Doc. No. 1 at ¶¶ 1-2.) In recommending that Petitioner's habeas petition be denied, the Magistrate Judge found that the petition was untimely and that neither one of Petitioner's claims for relief were sufficient to excuse the delay. (Doc. No. 20 at 3-6.) Furthermore, the Magistrate Judge determined that neither statutory nor equitable tolling applies in this instance. (Id. at 6-7.) Petitioner objects to those findings. (Doc. Nos. 26, 33.)

4

In his objections to the Magistrate Judge's Report and Recommendation, Petitioner substantially expands upon arguments that he initially made in his habeas petition.[3] At this stage in the litigation, it is not appropriate for Petitioner to raise new claims for relief. See E.D. Pa. Local R. Civ. P. 72.1.IV(c) ("[N]ew issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."). Instead, he must specifically identify the portions of the Report and Recommendation that he objects to and must also assert a basis for those objections. E.D. Pa. Local R. Civ. P. 72.1.IV(b). After reviewing Petitioner's sixty-one-page brief, the Court has identified three objections. First, Petitioner contends that the Magistrate Judge erred in finding that Miller does not apply to him. (Doc. No. 26 at 23.) He also alleges that the Magistrate Judge erred in concluding that Martinez v. Ryan, 132 S. Ct. 1309 (2012) does not entitle him to relief. (Id. at 33.) Finally, Petitioner objects to the Magistrate Judge's determination that the principle of equitable tolling does not apply here. (Doc. No. 33 at 49.) The Court will discuss each objection seriatim.

### A.    Petitioner's First Objection is Without Merit Because Miller Does Not Apply to Him

As noted above, the Magistrate Judge recommended that Petitioner's claims for relief be denied because his habeas petition is untimely. The AEDPA imposes a one-year statute of

---

[3] Acknowledging this expansion in his objections to the Report and Recommendation, Petitioner states:

> Petitioner had not raised these claims of constitutional violation. Petitioner submitted a standardized 2254 form, and wrote Abeyance. Petitioner was going to clarify and amplify all claims on amendment [sic] § 2254 petition along with the defaulted claims. Petitioner was unaware that the abeyance was void.

(Doc. No. 26 at 6; Doc. No. 33 at 7.)

limitations on federal habeas petitioners. The AEDPA year begins to run on the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Petitioner's conviction became final on March 31, 1985. (Doc. No. 20 at 4.) Because this occurred before the AEDPA was enacted on April 24, 1996, Petitioner had one year from that date to file a timely habeas petition under § 2244(d)(1). (Id.) Thus, Petitioner had until April 24, 1997 to seek federal habeas relief. (Id.) Petitioner did not file the present habeas petition until June 19, 2013, well after the AEDPA's one-year deadline expired. However, rather than look at the habeas petition as a whole, the Third Circuit has instructed that the starting date for the AEDPA's statute of limitations must be determined separately for each cognizable claim contained in the petition. (Id.) See Fielder v. Varner, 379 F.3d 113, 118 (3d Cir. 2004). Therefore, in some instances, the AEDPA starting date may vary from claim to claim. In order to overcome the fact that he failed to file his habeas petition by April 24, 1997, Petitioner relied on two recent Supreme Court cases to establish alternate start dates for his claims.

As previously noted, Petitioner relied on Miller v. Alabama, 132 S. Ct. 2455 (2012) in his federal habeas petition. In Miller, the Supreme Court of the United States held that mandatory life imprisonment without parole for those under the age of eighteen at the time of their crimes

violates the Eighth Amendment's prohibition on cruel and unusual punishments. Id. at 2475. Pursuant to Miller, Petitioner argued that his life sentence violates the Eighth Amendment. The Court agrees with the Magistrate Judge that Miller does not apply to Petitioner and therefore does not trigger an alternative AEDPA start date.

As quoted above, an alternate AEDPA start date may apply if a constitutional right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C). While the Supreme Court newly recognized a constitutional right in Miller, it has yet to determine whether its ruling applies retroactively, as required. Likewise, Petitioner has not argued that Miller is retroactive. Furthermore, as the Magistrate Judge noted in her Report and Recommendation, Petitioner's argument is not based upon the new rule of law that Miller established. (Doc. No. 20 at 4.) Instead, Petitioner seeks to extend Miller's holding so that it will apply to him. Throughout his filings, he repeatedly concedes that he was already eighteen years old at the time of underlying offenses. (Doc. No. 1 at 2, 10; Doc. No. 26 at 1, 24-25.)

Petitioner nonetheless contends that the Court should extend Miller's protection to him. In his habeas petition, he asserted that convicted eighteen year olds are similarly situated to younger teenagers because the frontal lobes of their brains are still developing. (Doc. No. 1 at 7) (citing Laurence Steinberg & Kathryn C. Monahan, Age Differences in Resistance to Peer Influence, 43 Developmental Psychology 1531 (2007)). Likewise, in his objections, Petitioner contends that at the time of the underlying offenses, he suffered from the same diminished culpability as teenagers under the age of eighteen. (Doc. No. 26 at 25.) Petitioner did not submit any evidence in support of these arguments. Instead, he cites to Pennsylvania's Juvenile Act which defines a "child" as someone who:

7

    (1) is under the age of 18 years;

    (2) is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years; or

    (3) is under the age of 21 years and was adjudicated dependent before reaching the age of 18 years, who has requested the court to retain jurisdiction and who remains under the jurisdiction of the court as a dependent child because the court has determined that the child is:

        (i)      completing secondary education or an equivalent credential;

        (ii)     enrolled in an institution which provides postsecondary or vocational education;

        (iii)    participating in a program actively designed to promote or remove barriers to employment;

        (iv)    employed for at least 80 hours per month; or

        (v)     incapable of doing any of the activities described in subparagraph (i), (ii), (iii) or (iv) due to a medical or behavioral health condition, which is supported by regularly updated information in the permanency plan of the child.

42 Pa. Cons. Stat. Ann. § 6302.

      As an initial matter, any argument that Petitioner qualified as a "child" or a "juvenile" under Pennsylvania law at the time he committed the underlying offenses is waived, because Petitioner raised this argument for the first time in his objections. As noted above, "new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." See E.D. Pa. Local R. Civ. P. 72.1.IV(c). Therefore, the Court will not consider this additional argument at this stage of the litigation.

      Even if the Court were to consider Petitioner's latest argument, it would nevertheless fail on the merits. Presumably aware that the definition of "juvenile" or "child" may vary from state to state, the Supreme Court drew a bright line at eighteen years of age, explicitly holding that

"mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Miller, 132 S. Ct. at 2460.  It does not matter whether Petitioner may have constituted a "child," as defined by Pennsylvania's Juvenile Act.  Rather, Petitioner's age determines whether Miller applies.  Because Petitioner was eighteen at the time he committed the underlying offenses, Miller does not apply to him.  See, e.g., Sharp v. Walsh, No. 13-3634, 2014 WL 265768, *3 (E.D. Pa. Jan. 21, 2014) (holding that Miller did not apply to habeas petitioner who was twenty years old at the time he committed the crime); Weaver v. Kerestes, No. 13-3947, 2013 WL 6506318, *3 (E.D. Pa. Dec. 12, 2013) (holding that Miller was inapplicable to habeas petitioner who was already eighteen years old on the date of his offense); Poole v. Attorney Gen. of Pennsylvania, No. 13-3722, 2013 WL 5814079, *3 (E.D. Pa. Oct. 28, 2013) (same); Ocampo v. Fisher, No. 13-3569, 2013 WL 5658387, *3 (E.D. Pa. Oct. 17, 2013) (same).  Lastly, even if the Pennsylvania definition controlled here, Petitioner has failed to set forth any evidence that he qualified as a "child," as defined by the statute.   For these reasons, the Court will approve and adopt the Magistrate Judge's recommendation that Petitioner's Miller claim be denied.

>**B.** **Petitioner's Second Objection is Without Merit Because He is Not Entitled to Relief Under Martinez**

Similar to Petitioner's first claim for relief, the Magistrate Judge found that Petitioner's ineffective assistance of counsel claims are untimely.  (Doc. No. 20 at 5-6.)  In support of these claims, and in order to invoke yet another AEDPA start date, Petitioner relied on another Supreme Court case, Martinez v. Ryan, 132 S. Ct. 1309 (2012).  There, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320.  Simply put, this means that PCRA counsel's alleged ineffective assistance could constitute "cause" to excuse the procedural default of an underlying claim that trial counsel was ineffective.[4]  The Court need not evaluate the merits of these claims, however, because Petitioner is not entitled to relief under Martinez for two reasons.

     First, Martinez does not afford Petitioner an alternate start date for the AEDPA statute of limitations.  As noted above, an alternate AEDPA start date may apply if a constitutional right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.  28 U.S.C. § 2244(d)(1)(C).  In Martinez, however, the Supreme Court did not recognize a constitutional right to counsel in initial-review collateral proceedings and did not create a freestanding constitutional claim for defendants to raise.  132 S. Ct. at 1319.  Thus, Martinez cannot be the basis of an alternate start date for the AEDPA statute of limitations.  Instead, Petitioner was required to raise his ineffective assistance of counsel claims by April 24, 1997, and he failed to do so.

     Second, even if Martinez was sufficient to trigger the AEDPA's one-year deadline, Petitioner's claim would be untimely and, therefore, non-reviewable.  The Martinez decision was filed on March 20, 2012, which means that Petitioner would have had to raise this claim by March 20, 2013 in order for it to be timely.  Petitioner did not raise this claim until he filed the

---

[4] In habeas corpus jurisprudence, a petitioner must show that the claim raised in the federal habeas petition has been exhausted.  In other words, a petitioner must show that the claim was "fairly presented" to the state courts.  Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  If not, then the claim is procedurally defaulted, and the federal court will not consider it.  Coleman v. Thompson, 501 U.S. 722, 729-32 (1991).  However, if a habeas petitioner can demonstrate "cause" for the procedural default and "prejudice" as result therefrom, the procedural default will be excused.  Murray v. Carrier, 477 U.S. 478, 485-95 (1986).  This exception allows a federal court to review the claim, even though it was not fairly presented to the state courts.

instant habeas petition on June 19, 2013.[5] Thus, even if <u>Martinez</u> triggered a new AEDPA date, Petitioner's claim would be untimely. For these reasons, the Court will approve and adopt the Magistrate Judge's recommendation that Petitioner's <u>Martinez</u> claim be denied.

> **C. Petitioner's Third Objection is Without Merit Because Equitable Tolling Does Not Apply**

As noted above, after determining that Petitioner's claims for relief were untimely and therefore non-reviewable, the Magistrate Judge considered whether statutory or equitable tolling may operate to excuse Petitioner's delay in raising these claims. The Magistrate Judge found that neither type of tolling applied in this case. (Doc. No. 20 at 6-7.) Petitioner objects and contends that he is entitled to equitable tolling.[6] The Third Circuit has advised that courts should apply the doctrine of equitable tolling sparingly. <u>LaCava v. Kyler</u>, 398 F.3d 271, 275 (3d Cir. 2005) (citing <u>Seitzinger v. Reading Hosp. & Med. Ctr.</u>, 165 F.3d 236, 239 (3d Cir. 1999)). It is appropriate to do so "when 'the principles of equity would make the rigid application of a limitation period unfair' . . . ." <u>Id.</u> at 275-76 (quoting <u>Miller v. New Jersey State Dep't of Corr.</u>, 145 F.3d 616, 618 (3d Cir. 1998)). Thus, Petitioner may only receive the benefit of equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). Petitioner has failed to satisfy either element, both of which are necessary in order to toll the statute of limitations.

---

[5] Petitioner alleges that the <u>Martinez</u> decision was not uploaded onto the prison's law library computer until June 2012, so he could not have raised this claim sooner. (Doc. No. 33 at 34.) However, the Court need not consider this argument because the Court has already determined that <u>Martinez</u> does not trigger a new AEDPA start date in the first place.

[6] Petitioner has not challenged the Magistrate Judge's finding that statutory tolling does not apply. Therefore, the Court will only focus on the issue of equitable tolling.

11

In his objections to the Report and Recommendation, Petitioner contends that equitable tolling is justified in this case because since 1984, he has never been able to acquire a copy of his trial transcript. (Doc. No. 26 at 60.) First, Petitioner has failed to demonstrate that he has been diligently pursuing his rights since April 7, 1995, the day the Pennsylvania Supreme Court denied Petitioner's request for allocatur challenging the denial of his PCRA petition. (<u>Id.</u>) Instead, more than eighteen years went by before Petitioner filed the instant habeas petition. With respect to his allegation that he has been trying to obtain a copy of his trial transcript since 1984, the Court notes that during the pendency of his direct appeal and collateral PCRA proceedings, Petitioner made multiple requests to the state courts and PCRA counsel for a copy of his trial transcript. (<u>See</u> Doc. No. 26, Exs. C-2, C-15, C-20.) After reviewing the various exhibits submitted by Petitioner, it appears that Petitioner last made a request for transcripts on October 23, 1993. (Doc. No. 26, Ex. C-15.) Petitioner has not produced any documents which demonstrate that he continued to make additional requests for transcripts between then and April 24, 1997, the day a timely habeas petition was due. His inactivity during this time does not demonstrate the diligence required to trigger equitable tolling.

Furthermore, Petitioner submitted a memorandum from the Clerk of Quarter Sessions' Prison Liaison Unit, dated December 1, 1999, advising Petitioner:

> If the Court has previously provided you or your attorney with Notes of Testimony, as stated in the attached memo they will no longer do so free of charge.
>
> \*\*\*
>
> We suggest you contact your attorney (attorney who represented you at the time of sentencing). If your attorney is unable to provide you with the Notes, and they were in fact transcribed by the Court Stenographer, the Clerk of Quarter Sessions will provide access to the original notes of testimony from our files for anyone to make copies at cost per page (public copy machine .25 cent[s] per page).

(Doc. No. 26, Ex. D-4.) Petitioner has not demonstrated that he followed this advice and contacted his trial attorney to obtain a copy of the transcript. In addition, Petitioner has not shown that he renewed his request for transcripts with PCRA counsel after his collateral proceedings concluded.[7] Based on the foregoing reasons, Petitioner has not satisfied the Court that he pursued his rights in a diligent manner. He has therefore failed to meet the first element necessary to entitle him to equitable tolling.

Petitioner has not satisfied the second element either. He has failed to demonstrate that the lack of his trial transcripts was an extraordinary circumstance that prevented him from filing a timely habeas petition. In fact, he ultimately filed the present habeas petition without them. Moreover, other federal courts have found that the unavailability of trial transcripts is not an extraordinary circumstance that warrants equitable tolling.[8] For example, equitable tolling did

---

[7] The Court notes that Petitioner previously requested a copy of his trial transcript from PCRA counsel, and PCRA counsel acknowledged that she received four volumes of Notes of Testimony. (Doc. No. 26, Ex. C-18.) However, in a letter dated January 15, 1990, PCRA counsel advised Petitioner as follows:

> I have been unable to obtain a copy of your Notes of Testimony from the Copy Center. Your Notes exceed 400 pages in number. I am not permitted as Court-appointed counsel to duplicate them myself, unless I want to do so without reimbursement. . . . If any changes in this situation arise, I will let you know immediately.

(Doc. No. 26, Ex. C-17.)

[8] See Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002) (finding that state court's delay in providing transcript to habeas petitioner did not establish a basis for equitable tolling); Lloyd v. Van Natta, 296 F.3d 630, 634 (7th Cir. 2002) (holding that equitable tolling does not excuse late filing simply because habeas petitioner was unable to obtain a complete trial transcript before he filed his § 2254 petition); Weibley v. Kaiser, 50 F. App'x 399, 403 (10th Cir. 2002) (finding petitioner not entitled to equitable tolling because he did not allege specific facts that demonstrated how the alleged denial of court records and transcripts impeded his ability to file a federal habeas petition); Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001) ("We do not think that these delays in obtaining the transcript of the trial should have the effect of extending the limitations period."); Singleton v. Davis, No. 13-132, 2014 WL 2155041, *1 (M.D. Ga. May

not operate to excuse the petitioner's untimely petition in White v. Shannon, No. 01-4298, 2003 WL 21771723 (E.D. Pa. July 24, 2003). There, the district court reasoned as follows:

> White also objects to the Magistrate Judge's omission of "proffered facts that explain petitioner's due diligence in asserting rights; . . . [and] that explain why it was unreasonable for petitioner to file his habeas petition prior to its actual filing . . . ." (Objections to R & R, p. 13). He contends that for thirteen years he diligently sought the missing transcript, and only after hiring a private investigator did he learn that the stenographic notes he sought had been destroyed, and only after learning this was it reasonable to file first his PCRA claim and then his petition for federal *habeas* relief.
>
> White may well have exercised due diligence in seeking the transcript, but locating the missing transcript was *not* a prerequisite to filing his PCRA claim; White could have filed his PCRA claim long before learning the transcript was unavailable. This objection will be overruled.

Id. at *5-6 (original emphasis). Similarly, obtaining a copy of his trial transcript was not a prerequisite for Petitioner to file his petition for federal habeas relief, and Petitioner has not set forth any evidence that not having these documents prevented him from filing said petition. He therefore cannot satisfy the second element necessary for equitable tolling, and the untimeliness of his petition will not be excused.

In further support of his argument that equitable tolling applies, Petitioner relies on McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), a case in which the Supreme Court held that a credible claim of actual innocence can overcome the AEDPA's statute of limitations. (Doc. No. 33 at 49.) However, in doing so, the Court cautioned that "tenable actual-innocence gateway

---

22, 2014) (finding that the lack of a trial transcript did not entitle the habeas petitioner to equitable tolling); Reynolds v. McLaughlin, No. 12-140, 2013 WL 3756473, *2 (M.D. Ga. July 15, 2013) ("[D]elay in receiving the transcript and discovery from appellate counsel does not constitute extraordinary circumstances warranting equitable tolling. Access to transcripts and other trial materials is not necessary to file a habeas petition."); Brown v. Cain, 112 F. Supp. 2d 585, 587 (E.D. La. 2000) (declining to apply equitable tolling after habeas petitioner failed to show that he specifically needed trial transcripts in order to apply for post-conviction relief in state court); see also Brown v. Shannon, 322 F.3d 768, 774 (3d Cir. 2003) (noting that even without counsel's aid and transcripts, a diligent petitioner could have at least filed a basic pro se habeas petition before the deadline).

pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner has failed to meet this demanding standard. Instead of presenting new evidence that would establish his innocence, Petitioner simply states that "[t]he evidence was insufficient to support the finding of guilt" and "the facts underlying the claim would be sufficient by clear and convincing evidence that [but] for constitutional errors no reasonable fact finder would have found the applicant guilty of the underlying offense." (Doc. No. 33 at 49, 51.) These conclusory statements do not establish a credible actual innocence claim that would excuse Petitioner's delay in filing his federal habeas petition. His claims remain time-barred, and the Court agrees with the Magistrate Judge that they are non-reviewable.

### IV.    CONCLUSION

For the aforementioned reasons, the Court will deny Petitioner's objections and will instead approve and adopt the Magistrate Judge's Report and Recommendation, denying Petitioner's claims for relief.